I, Miguel Miranda, of the Metropolitan Police Department (MPD) (herein "Affiant"), being duly sworn under oath, do hereby depose and state: I am currently assigned to the Federal Bureau of Investigation (FBI)/MPD Child Exploitation Task Force where my duties include the investigation of on-line offenses involving children, including the production, transportation, distribution, receipt and possession of child pornography. I have been a member of the Metropolitan Police Department in the District of Columbia since 1990. In 1999, your affiant was promoted to Detective Grade 2 and is currently serving at this rank. I have received training in the following subject areas: Family Violence and Child Protection, Basic Investigator Course, Interview and Interrogation, Sexual Assault Nurse Examination, Children's Hospital Conference on Responding to Child Maltreatment, Child Abuse and Child Exploitation Investigation Techniques, Undercover Internet Crimes Against Children (ICAC) Investigations Course and Image Scanning. I have made numerous arrests and interviewed numerous victims, witnesses, and suspects. I have participated in numerous child abuse investigations, child sex abuse investigations, and ICAC investigations.

On March 30, 2015, at approximately 2218 hours, Your Affiant received a work sheet from Sgt. Robert Zurowski. The complaint came in from the 7th District Officer M. Moshier. Officer Moshier had received a call to respond to the residence of a 14-year-old reporting person (herein "R-1"), who lived at a residence located at 1481 Bruce Pl, SE in Washington, D.C., with his mother ("W-1") and other family members. En route to the residence, officers located W-1 and Defendant arguing on the sidewalk in the 1500 block of Tobias Drive S.E., in Washington, D.C., around the corner from the residence to which officers were dispatched. When officers stopped, W-1 was arguing with Defendant. When asked what the argument was about, W-1 stated, "he violated my daughter," while pointing at Defendant. R-1 was also present on the sidewalk and informed officers that Defendant had a video on his cellular phone depicting Defendant's hand between the legs of R-1's 9-year-old sister ("V-1"). R-1 was in possession of Defendant's phone and handed it to Officer Philistin, who was present on scene.

Defendant spontaneously stated to officers that the video on his phone looked bad but that he did not do anything wrong. However, Defendant appeared to officers on scene to be acting shameful and was unable to maintain eye contact with officers or explain himself. Officer Philistin asked to look at Defendant's phone, but Defendant responded he could not.

R-1 and W-1 were taken back to their residence for further interviews.

On March 30, 2015, at approximately 2230 hours, the undersigned and Detective J. Andrews responded to 1481 Bruce Pl. SE. Upon arrival, Detective Andrews and your affiant interviewed the officers on the scene, and learned the above facts.

Your affiant interviewed R-1, who said that earlier that night he had asked Defendant for his phone so he could play games on the messaging application, KIK. Defendant provided his phone to R-1. R-1 reported that he began going through the phone, and in a photo gallery, he saw a video of Defendant sexually abusing S-1. In the video, V-1 appeared to R-1 to be asleep. At the beginning of the video, R-1 reported that you could see the interior of V-1's bedroom. V-1 has her own bedroom, which R-1 recognized in the video because of the gray color of the wall in V-1's room, and because R-1 recognized V-1's bedding, which is black and has colored flowers on it and is depicted in the video. The video then showed V-1, who in the video is

1

wearing an angry birds t-shirt and purple pajama bottoms. R-1 could hear audio on the video of what he recognized to be Defendant's voice saying, "damn" as the camera pans down. R-1 reported that the video depicts the Defendant's hand grabbing the waistband of V-1's pajama bottoms and pulling them down. R-1 states that he could see V-1's underwear as well, which Defendant also pulled down. R-1 reported that Defendant pulls both the underwear and the pajama pants down to V-1's thighs. V-1's legs are slightly apart in the video and, according to R-1, the front of V-1's vagina is exposed. Defendant's hand appeared to R-1 to be reaching for V-1's vagina, at which point R-1 turned the video off, ceased watching, and returned the phone back to Defendant.

After seeing the video and returning the phone to Defendant, R-1 stated to Defendant that he needed to get some soap from his grandmother as an excuse to leave the residence and report what he had seen. R-1 then ran down the block to his grandmother's home and told her about the video. R-1 also phoned his mother, W-1, and reported to her what had occurred.

The undersigned then interviewed the grandmother of R-1, who stated that R-1 came over and told her that he saw a video of V-1 on S-1's cell phone. R-1 told her that, in the video, S-1 had his hand in the area of V-1's vagina, but R-1 did not finish watching the video and turned the phone off and gave it back to Defendant. R-1's grandmother said that she then called W-1 and informed her she needed to return back home immediately. W-1 told the grandmother that she had only stepped out briefly, and would return to the house right away. W-1 did so.

Detective Andrews interviewed W-1; she stated that she has known Defendant since 1999 when they were seniors in high school. W-1 indicated that Defendant was a friend. She also stated that Defendant has two young children of his own. W-1 informed the undersigned and officers that she had received a call from both W-1 and R-1 about what had occurred at her home while she was out running an errand, having left R-1 and V-1 in Defendant's care. She had been out of the home when R-1 saw the video and returned immediately upon receiving the calls. Immediately upon returning to the home, W-1 picked up Defendant's phone to hold onto as evidence until the police could be called. She began to look at the phone to locate the video, but Defendant entered the room and stopped her before she could locate the video. R-1's grandmother then arrived and called the police in front of Defendant. Defendant pled with W-1 not to call the police and apologized to her for what he did, stating to her that he "has a problem." Defendant then began collecting his belongings and left the residence. Defendant attempted to get his phone back from W-1 but she refused to return it and followed Defendant out of the house, ultimately onto Tobias Drive where Defendant was stopped by police.

When detectives arrived, V-1 was at the residence, where she also resides with W-1, watching television. Detective Andrews interviewed V-1. V-1 indicated that Defendant is a friend of the family who sleeps over regularly. V-1 indicated that Defendant also often babysits her, her 12-year-old brother, and R-1. V-1 did not state anything about the incident depicted on Defendant's phone. When subsequently interviewed at the Children's Advocacy Center, V-1 also did not make any statements about the incident depicted on Defendant's phone.

Defendant was identified as Rasheed Shariff Richburg by his D.C. Identification card on scene. At approximately 2320 hours, Defendant was arrested and taken to the Seventh District for processing. Detective Andrews attempted to interview the Defendant after providing him

his Miranda warnings. Defendant invoked his Miranda rights and asked for a lawyer, and no questions were asked.

Upon arrest, Defendant's phone was seized, as were two thumb drives taken from Defendant's right front pants pocket. In subsequent interviews on March 31 and April 1, 2015, W-1 provided detectives additional information. W-1 informed detectives that V-1 received an angry birds t-shirt for Christmas in 2013. W-1 stated that V-1's bedroom wall was painted gray at the beginning of 2014. W-1 was also asked about Defendant's known usage of computer devices and USB drives. W-1 indicated that Defendant regularly brings USB drives to her home and plays them on her Xbox gaming console. She also stated that Defendant owns multiple computers and many computer accessories that he keeps at his own home. W-1 specified that Defendant lives in a room in the home across the street from where he had grown up. W-1 specified the location of Defendant's room in the house, which she indicated is where Defendant keeps his computer equipment. Your Affiant asked W-1 to ride with him in his car and point out the location of Defendant's home. W-1 guided Your Affiant to Defendant's home and identified it as Defendant's residence.

On March 31, 2015, search warrants were obtained by law enforcement from D.C. Superior Court for Defendant's cellular phone. That same day, a forensic analysis of that phone was conducted by Investigator John Marsh at the United States Attorney's Office. Included on Defendant's phone was a video depicting Defendant and his minor daughter in Defendant's home. Defendant's daughter identifies Defendant as her father and states that Defendant has three computers in his home. Defendant's daughter pans the cellular phone video recorder so the video recording displays multiple computers in Defendant's room.

In addition, in a password-protected file located in the "Photos" application on Defendant's phone, is a video recording taken with the phone's video recorder that depicts a prepubescent, sleeping black female child, who is sleeping on her side. The perspective of the camera originates on the ground, pans up to the child's bed, which has no sheets on it, and pans up to focus on the child's buttocks. The child's nightshirt is pulled up and she is wearing blue underwear. The camera lingers on the child's buttocks, and then it appears the operator startles and sneaks away. The video described by R-1 was not located.

On April 1, 2015, law enforcement obtained search warrants from D.C. Superior Court for the two USB Drives recovered from Defendant's pants' pocket in a search of Defendant incident to arrest. On that same day, Investigator Marsh conducted a forensic review of the contents of those two USB Drives. One of the USB drives included over 100 files depicting child pornography. Among the images included on the USB drive were images depicting the exposed, unclothed vaginas of prepubescent female minors. The various images included a number of images of prepubescent female minors being vaginally penetrated by an adult male's penis, and of prepubescent female minors with an adult male's penis in their mouths. The same USB drive contained on it files that evidenced that the USB drive had been connected to an Apple computer on March 19, 2015.

Based on the foregoing information, law enforcement obtained a search warrant from D.C. Superior Court for Defendant's residence. Law enforcement had learned prior to executing the search warrant that the Defendant resided primarily and exclusively in a particular room within the residence, a description of which was provided to law enforcement by W-1.

3

When they arrived at the location, the Defendant's door to his room was locked. Law enforcement breached the door. Once inside, they observed belongings of the Defendant, including his bed, personal belongings and mail matter addressed to the Defendant. No other individual resided within the room. Agents executing the warrant recovered a number of electronic devices from Defendant's room, including two laptop computers, a Dell and a Toshiba; a 60 GB Hard drive, an XBOX 360 bearing serial number 070243583207; a Compaq Evo desktop computer tower bearing serial number x231JVFZAU63; a Samsung cellular phone bearing serial number ANJZ969AS15-8; a white 60 GB Ipod bearing an obliterated serial number; a pink and white Smartab Junior bearing serial number BNO7.04.002.032.01; a Red DANE-ELEC 8 GB USB drive; a gray and orange Kodak flash drive; an iSOUND model number isound.2124; a black pandigital bearing serial number 7013520811617746); a Gigaware USB PortHub with a Logitech Flash drive inserted; over 100 compact discs; an Iomega external hard drive bearing no distinguishable serial number; and a white MacBook Laptop bearing no discernable serial number.

Pursuant to a D.C. Superior Court search warrant, Investigator Marsh began a forensic examination of the above devices. The following devices contained information as described:

1. White MacBook laptop: contains over 100 images of child pornography, including a number of images depicting pre-pubescent female children being vaginally or anally penetrated by an adult male's penis or with an adult male's penis in the female minor's mouth. In addition, a review of the web-page previews, which reflect the user's web-browsing history and allow a forensic examiner to track the user's access of online child pornography, reflects that the Defendant browsed over one thousand sites dedicated to child pornography and the purpose of which is for users to download and share child pornography. With respect to a number of these sites, the Defendant was required to have an account in order to access the website.

2. Kodak 16 GB USB flash drive: contains six images of child pornography, all depicting prepubescent female minors. In addition, one image is a photo that that appears to have been taken by the Defendant, which the meta-data reflects was added to the drive on March 25, 2015. The image depicts a prepubescent, black, female child who appears to be asleep in bed. She is wearing white pajamas with pink polka-dots and is sleeping on a bed covered in bedding with a cartoon image on it. The focus of the image is on the girl's buttocks, which are exposed, as a black male's hand is pulling down the child's pajama bottoms below her buttocks. The child's face is not pictured, as the entire focus of the image is the child's naked buttocks.

3. Iomega external hard drive: Includes a back-up file uniquely named "NN Girls Collection," a title consistent with Your Affiant's knowledge of what collectors would name a folder containing child pornography. Included within that folder are, among other images:

    a. Over 100 images of child pornography, including many images of prepubescent female children being anally and vaginally penetrated by an adult male's penis; many images of prepubescent female children with an adult male's penis in their mouths; an image of two pre-pubescent female children performing cunnilingus

on one another; and images depicting bondage of prepubescent female children, including, for example, an image of a prepubescent female lying face-up and nude on a bed, bound at the ankles and wrists with yellow rope.

b. Six thumbnails for videos that depict child pornography, including images of prepubescent female minors being penetrated vaginally by an adult male's penis and prepubescent female minors with adult male's penis in their mouths.

c. Preliminary forensic analysis also revealed a file sharing program employed by the defendant, which indicates that the defendant was downloading videos of child pornography. The videos were entitled, for example, "Young_Blonde_Lolita_Fucked_By_Boyfriend.wmv" and "!Lolita Little Sweet Russian Girl."

Based on my training and experience and on information learned from Investigator Marsh about his examination of the above devices, Your Affiant is aware that when a thumbnail of a video is present on an electronic device, as is the case here, that video has been downloaded on the device and, even if presently deleted or inaccessible to the device, would have existed on that device at some prior time.

Forensic examination of the Iomega external hard drive also reveals what appear to be a series of encrypted folders on the drive. These folders require decryption before they can be further accessed. Based on my training and experience, collectors of child pornography often create such folders and encrypt them to hide the images and videos of child pornography collected and housed therein. Defendant's computer contained on it a receipt for Encryptstick software. Additional forensic examination using more advanced forensic tools will be required to access the contents of these encrypted containers

Investigator Marsh also attempted to examine the Red DANE-ELEC 8 GB USB drive recovered from the Defendant's residence. That USB drive also appears to be an encrypted drive capable of housing additional child pornography files. Given the encryption, further, more advanced forensic examination will be required to access that USB drive. Additional forensic analysis of the remaining devices is ongoing, with the exception of the compact discs, one of the laptops recovered from Defendant's house, and the second USB drive taken from Defendant's pocket in the search incident to arrest, which did not contain child pornography. The remaining devices are still being forensically examined for additional evidence.

Your Affiant has learned all of the above facts either through direct personal knowledge, review of the evidence, or from other law enforcement officers named herein.

_____
Detective Miguel Miranda
Metropolitan Police Department

Sworn and subscribed to before me this 24th day of April, 2015.

_____
United States Magistrate Judge